No. 71.—Robert S. Sayre and William H. Sayre, plaintiffs in error *vs.* Robert Watkins Flournoy, adm'r. of Robert Willis Flournoy, deceased, and Nathaniel A. Adams, and Mary M. his wife, defendants in error.

[1.] A court of equity will aid a judgment creditor who has pursued his legal remedies to every available extent, to reach a distributive share of an estate to which an insolvent debtor is entitled in his *own right*, in the hands of an administrator, held *in trust* for such judgment debtor.

[2.] The husband has no interest vested in him in his wife's choses in action, until he *reduces them into his possession*, and as a *general rule*, a court of equity will not compel the husband to reduce them into possession, so as to defeat the wife's right of survivorship thereto.

[3.] Creditors of the husband who claim to be subrogated to his rights, as against the property of the wife, have no other rights than the husband who is *their debtor*, against such property.

In Equity. Bill and demurrer. From Washington Superior Court. Tried before Judge Holt. September Term, 1847.

The plaintiffs in error filed their bill on the equity side of the Court below, alleging that they as former partners using the style of William H. Sayre and company, obtained judgment in Hancock Inferior court, February, 1829, against said Nathaniel A. Adams, for $1,107 70½, and $170 73 interest and costs; that execution was issued and several returns of *nulla bona* had thereon, and that the same was still due, no part thereof having been paid thereon. The bill further alleged, that the original consideration and origin of their debt was merchandise and necessaries supplied by them

to Adams, for the benefit, use and sustenance of the wife and family of said Adams, then residing in the county of Hancock; that the said Mary M. Adams, wife of said Nathaniel A., had had settled upon her by a decree in chancery, slaves, bank stock and money to the amount of $15,925 out of her father's estate, during her life, with remainder to her children, and under which her trustee had received to her use divers sums of money amounting to $10,000, or other sum, from the sale of real estate of her father, of which she had had the benefit and avails.

The bill further alleged, that in 1844, the intestate of the defendant Robert Watkins Flournoy, departed this life intestate, unmarried, and without lineal heirs, that he was a brother of the said Mary M., and left a large estate, real and personal, of the value of $80,000, or other large amount, to be distributed amongst his brothers and sisters who were his heirs at law, the said Mary M. and her said husband Nathaniel A., being entitled to one-sixth part thereof, she being a sister and heir to said intestate; that said estate was unincumbered by debt, and in the hands of said Robert Watkins Flournoy, who had taken upon himself the burden of the administration.

The bill further alleged the total insolvency of said Nathaniel A. Adams, and that the complainants knew of no property or means of his, whereby their judgment might be satisfied, except the estate and interest vested in him and his said wife, in the estate of the said Robert Willis Flournoy, deceased, and to which they alleged the said Nathaniel A. and wife were entitled.

The bill further alleged, that said estate was still in the hands of said administrator, and that he had been notified of the complainants' said judgment, and requested to hold a sufficiency thereof in his hands to satisfy the same; and concluded with a prayer for a decree requiring said administrator to satisfy said judgment out of the distributive share of said Nathaniel A. and wife in said estate, and for other relief, &c.

To this bill the defendants demurred upon several grounds, but more especially, that there was no equity in the bill; that there was no privity between the claims of the complainants and defendants; that the distributive share to which said Mary M. was entitled to have out of said estate, was in no wise liable or subject to the claim of the complainants, as the same remained in the hands of the administrator and was therefore not vested in said Adams,

nor could it vest until the same was recovered, and reduced into possession, during the lifetime of his wife Mary M.

The Court below, after argument, sustained the demurrer and dismissed the bill.

To which the counsel for the complainants excepted, and assigned the same for error.

JOHNSTON & THOMAS and F. H. CONE, for the plaintiffs in error.

CHARLES J. JENKINS, R. W. FLOURNOY and WM. LAW, for the defendants in error.

JOHNSTON & THOMAS, for the plaintiffs in error.

The general doctrine that there is a want of privity by the creditors of the legatee and the executor, is admitted to the extent laid down by Judge Story and the cases to which he refers.  *Story Eq. Pl. sec.* 517; *Emsley* vs. *McCauley,* 3 *Bro. Ch. R.* 624.

The very same doctrine is laid down in the following cases to the same extent  1. A creditor or legatee cannot make a debtor of the estate a party, but must sue the executor alone.  2. A debtor who has conveyed his property in trust for the benefit of his creditor, cannot, nor can any of his creditors, maintain any suit touching the property, but the suit should be in the name of the trustee. 3. So of a bankrupt, neither he nor any of his creditors can maintain a suit against any debtor to the estate.  *Story Eq. Pl.* 513, 514, 515, 516, 517.

6 *Vesey R.* 748; 4 *id.* 651, 217; 2 *id.* 95; 11 *id.* 29; 1 *Johns. R.* 305; 1 *Vesey R.* 104, *ante* 227.  The want of privity in all these cases, is upon precisely the same grounds, and yet it will be found if in any either fraud or collusion, or *insolvency.*  The ground of insolvency is only a ground where there is no other adequate, full and complete remedy.  See *Utter* vs. *Mair,* 4 *Bro. Ch. R.* 269, yet a court of equity has jurisdiction.  1 *Bar. & Har. Dig.* 340; 7 *Johns. Ch. R.* 208; 6 *id.* 132.

Whenever a right is recognised and protected by the law, where a *plain, adequate* and *complete remedy* cannot be had in the courts of common law, courts of equity have jurisdiction.  1 *Story Eq. Jur. sec.* 33; 10 *Johns. R.* 587; 17 *id.* 284.

The case of *Burroughs* vs. *Elton,* 11 *Vesey R.* 35, went solely on the ground that the creditor had no other remedy, and so of all

the others, except where there is fraud and collusion, which is a ground of itself to give relief in equity.

The case of *McDowl* vs. *Charles,* 6 *Johns. Ch. R.* 132, was neither a cause of collusion, fraud nor trust, but decided under the circumstances of the case; plaintiff and defendant were the only heirs; defendant was indebted to the estate, and did not choose to administer; defendant was held liable to account for half the debt due by him.

Complainants show a clear, plain, and legal right; they show that they have no remedy at common law, either plain, adequate or complete; they show a trust fund in the hands of defendant Flournoy, they therefore bring themselves within the very principles of the jurisdiction of a court of equity.

The rights of the court of equity in Georgia are more extensive in Georgia to reach this fund, than in England or New York, because, 1st, in England the bankrupt laws reach it; 2nd, because by late authorities in England it has been held, that a court of equity cannot give its aid to reach choses in action which an execution does not bind, nor can it be made to reach them at law, either in England or New York. By our statute a plain remedy is given by summons of garnishment, to reach all choses in action, except in the very class of cases now before the Court.

LAW, JENKINS & FLOURNOY, for the defendants in error, made the following points:

1. There is no privity between complainants and Flournoy, administrator, &c. *Story Eq. Pl. secs.* 262, 513, 514, 517; *Mitf. Pl.* 129, 133; 3 *Brown Ch. R.* 624; 2 *Vesey Jr. R.* 95.

2. By complainants' own showing, the property sought to be reached, consists of choses in action appertaining to the wife of the debtor, has never been reduced to possession by him, and has therefore never vested in him. 1 *Roper on Hus. & Wife,* 204, 208; *Coke on Litt.* 351; 1 *Kelly R.* 640.

3. By complainants' showing it appears, that the property sought to be reached is subject to the wife's equity, which is superior to the lien of the husband's judgment creditors. 2 *Story Eq. Jur.* 1421, 1421, *a;* 2 *Kent Com.* 117, 118, 119, 120; 1 *Roper on Hus. & Wife,* 298.

4. By complainants' showing it appears, that the debt was contracted for the support and maintenance of the debtor's family,

who have now a separate estate ; their remedy, then, is against that, if any they have.

Mr. CONE, in conclusion, for the plaintiffs in error.

After a party has obtained judgment at law and issues execution, and the execution has been returned *nulla bona,* a court of equity will assist such judgment creditor to reach an equitable fund in the hands of a third person, belonging to the judgment debtor. 2 *Atk. R.* 600 ; 3 *id.* 352 ; 4 *Johns. Ch. R.* 687 ; 7 *id.* 209 ; 2 *Paige R.* 567 ; 20 *Johns. Ch. R.* 524, 554 ; 9 *Cowen R.* 722 ; 6 *Ham. R.* 112, 233 ; 2 *Kent Com.* 358 ; 2 *Rand. R.* 384 ; 6 *id.* 188 ; *Rice Eq. R.* 110 ; *Bailey Eq. R.* 360.

*By the Court.*—WARNER, J., delivering the opinion.

The object of the complainants' bill as disclosed by the record before us is, to have their debt satisfied out of the fund now in the hands of the administrator of Robert Willis Flournoy, deceased. The complainants are judgment creditors of Nathaniel A. Adams, who intermarried with Mary M. Flournoy, the sister of Robert Willis Flournoy. It appears from the record that Adams is *insolvent,* and that the complainants have exhausted their legal remedies against him without having been able to collect their demand. It also appears, that Mary M. Adams, the wife of their judgment debtor, is entitled to the one-sixth part of the estate of her deceased brother, Robert Willis Flournoy, of the value of eighty thousand dollars, which is in the hands of Robert Watkins Flournoy, his administrator.

To the complainants' bill the defendants demurred ;

First. Because there was no equity in their bill ;

Second. Because there was no privity between the claim of the complainants and the defendants ;

Third. Because the distributive share which Mary M. Adams was entitled to have out of said estate, was in no wise liable or subject to the claim of the complainants, as the same remained in the hands of the administrator and was therefore not vested in said Adams ; nor could it vest until the same was recovered and reduced into possession during the life time of his wife, Mary M.

The Court below sustained the demurrer and dismissed the

complainants' bill, to which the complainants excepted, and now assign the same for error in this Court.

[1.]    That a court of equity will assist a judgment creditor who has pursued his legal remedies to every available extent to enable him to reach *trust* funds belonging to the debtor, in the hands of a trustee, is, in our judgment, an undeniable proposition.

Had Adams, the debtor of the complainants, been the distributee of Robert Willis Flournoy, and entitled to the distributive share now in the hands of the administrator, in his *own right*, they would have been entitled to the aid which they now seek by their bill.

The complainants are not simple contract creditors, seeking to collect their demand out of a *debtor* to the estate of Robert Willis Flournoy, but they are judgment creditors, who, in equity, would be entitled to have their judgment paid out of any funds in the hands of the administrator—who is a *trustee*—to which their judgment debtor is entitled, in his *own right*, and which cannot be reached by their execution at law.    The fact that the judgment creditor has exhausted all his legal remedies without obtaining satisfaction of his judgment, gives him a right to come into a court of equity and ask its assistance to reach the fund in the hands of the administrator, held in *trust* for the judgment debtor; and the *insolvency* of the judgment debtor, in our judgment, greatly strengthens the complainants' equity; for if the administrator should pay over to the debtor the fund held in trust for him, it might be squandered, misapplied, and placed entirely beyond the reach of the creditor.

We are of the opinion, that where a creditor has obtained judgment, and pursued his legal remedies to every available extent, without obtaining satisfaction of his demand, and his debtor is entirely *insolvent*, a court of equity will lend its aid to assist him to reach a distributive share to which he may be entitled in his *own right*, in the hands of an administrator, who holds the same *in trust* for such judgment debtor.

[2.]    The complainants in this case do not seek to reach funds in the hands of the administrator to which their judgment debtor is entitled in his *own right*.    They seek to have the distributive share of their judgment debtor's wife, now in the hands of her deceased brother's adminstrator, applied to the payment of her husband's debt, before he has reduced the same to possession.

To enable the complainant in a bill to maintain his suit in a court

of equity, it is essentially necessary that he should show a *proper right or title* to the thing or interest demanded. *Story Eq. Pl.* 564. The complainants in this case, as judgment creditors, ask to be subrogated to the rights of their debtor, Nathaniel A. Adams. What right or title has Nathaniel A. Adams to the distributive share of his wife in her deceased brother's estate, now in the hands of the administrator? The mere *naked* right to sue for and reduce the same to possession. And this mere naked right is made subservient to his wife's equity, for when he sues for the distributive share of his wife, it is competent for the court to decree the *whole* fund, for the benefit of his wife and children. 2 *Kent Com.* 146 ; *Like* vs. *Beresford*, 3 *Vesey Jr. R.* 512.

The complainants allege in their bill, that a settlement has been made on Mrs. Adams out of her father's estate ; but this does not affect her right of *survivorship* to her share of her brother's estate, nor clothe her husband or his creditors with any additional rights ; for it is well settled that the wife is entitled to her equity upon a new accession of fortune. *Ex parte Beresford*, 1 *Desaus. Eq. R.* 263 ; *Lady Elibank* vs. *Montolieu*, 5 *Vesey R.* 737.

The husband has the mere *naked* right to reduce his wife's choses in action to possession ; and if he fails or neglects to do so during the coverture, and his wife survives him, she is entitled to them and not his representative. 2 *Bl. Com.* 351. This is the rule at law, and equity follows the law in this respect. *Clancy Hus. & Wife* 109.

The creditor can only reach the property of *his debtor;* can the wife's *choses in action* be considered as the property of the husband until he has *reduced them to* possession? If they are *his* property, on what principle is it that courts of equity decree provision to the wife, when he seeks to reduce them to possession? If the wife's choses in action are *the property of the husband*, on what principle is it they survive to the wife on the death of the husband, before he has reduced them to possession? The idea that the husband has any absolute right or title to his wife's choses in action, *vested in him*, before he has reduced them to possession, is entirely inconsistent with her legal right of survivorship, as well as her equitable right to have the whole appropriated for the separate use of herself and children. In *Gallego* vs. *Gallego's ex'rs.*, 2 *Brock. R.* 287, Chief Justice Marshall remarked : " The property does not become the husband's, nor is it subject to the liabilities which attach to that

which is his, until it shall be reduced to possession. Till then, his creditors have *no claim to it.*"

In *Gayner* vs. *Wilkinson*, 2 *Dickens R.* 491, Lord Bathurst said, " that the *interest of the wife* was not such a legal interest as the husband could assign."

In *Elibank* vs. *Montolieu*, 6 *Vesey R.* 743, the defendant as administrator, sought to retain out of the wife's share of her deceased sister's estate for a debt due by her husband; the Lord Chancellor said : " With respect to the point made by the answer of Montolieu, that he had a *right* to retain against the debt of the husband, being possessed of the fund as administrator, and the wife being one of the next of kin, I am very clearly of opinion that the defendant *had no right to retain.*" In *Wright* vs. *Morley*, 11 *Vesey R.* 17, the Master of the Rolls speaking of·the rights of an assignee of the wife's interest by the husband for a valuable consideration, said: "If the husband has but the right of reducing the wife's interest into possession, how can he, for valuable consideration or otherwise, convey more than he has ? If he does not reduce it into possession, it clearly survives. If, then, he parts with it for a valuable consideration, and the *assignee* acquires a *right* different from that which the husband had, he parts with something different from what he has." If Adams, the judgment debtor, has no absolute right vested in him to the fund to which his wife is entitled in the hands of the administrator, until he reduces it to possession, have the complainants, his creditors, any other or better right than he has ?

In the case of *Dun* vs. *Bowyer*, 2 *McCord Ch. R.* 374, the complainants were creditors of the husband, and sought to have the distributive share of the wife in the hands of an administrator applied to the payment of their debt. In delivering the judgment of the Court, Johnson, Judge, said : " They (the complainants) are strangers, creditors of the husband, who seek to have their demand paid out of the wife's equity. They have in law no lien on this fund, nor is it given by contract, and it is difficult to conceive on what principle their claim proceeds. None, I apprehend, exists in law, and if it be a *mere equity,* .it is opposed by the *higher equity* of the wife, and they cannot be relieved."

In *Perryclear* vs. *Jacobs*, 2 *Hill Ch. R.* 509, Chancellor Harper said, in delivering the judgment of the Court, " Creditors of the husband have *no interest whatever* in the wife's expectancy, not yet

reduced into possession, and if they think proper to credit him on the faith of it, it is at their peril."

Mr. Clancy, in discussing the rights of the husband's assignee for valuable consideration to the wife's choses in action, remarks: " Whatever right the husband's assignee for valuable consideration of the wife's equitable choses in action may have with respect to them, it seems that the *mere creditor* of the husband, who has had no assignment, *has no claim. Clancy Husband and Wife,* 508. Why should the creditor of the husband have a claim upon that which does not belong to the husband ? The property is not his until he reduces it to possession, but it is the property of the wife, and will survive to her on the death of her husband.

Adams, the husband, has the naked right to institute a suit against Robert Watkins Flournoy, the administrator of Robert Willis Flournoy, to recover the distributive share to which his wife is entitled as next of kindred to the deceased. The complainants can only be subrogated to this naked right of their debtor. Does this naked right to sue for the property, *vest in the husband* any certain, legal or equitable title thereto ? We think not, for the reason that the title to the property is *vested in the wife,* both at law and equity, until the husband *reduces it to possession;* consequently, the complainants have shown no perfect right to have the property of the wife applied to the payment of their demand against the husband, who is *their debtor.* When the distributive share of Mrs. Adams shall become the property of *their debtor,* then they will be entitled to have it appropriated to the payment of *their debt;* but at present, their debtor has only a *mere expectancy* in his wife's property, in which they have no definite title or interest, either legal or equitable.

If the complainants were permitted as the creditors of the husband to take the property of the wife out of the hands of the administrator, and apply it to the payment of their demand, it would cut off and destroy the wife's right of survivorship thereto in the event of her husband's death. Can a court of equity *compel* the husband to reduce his wife's choses in action to possession, and thus cut off and destroy *her right of survivorship ?* The power of the court has usually been exerted to restrain the husband and his assignees from reducing his wife's property into his possession, and to provide for the wife and children. But the assistance of the Court is now asked to *compel* the husband to reduce his wife's choses in action into his possession, that the

same may be applied to the payment of the husband's debts, and to cut off her right of survivorship to that extent.

Blackstone, in speaking of the wife's choses in action, says, " These the husband may have if he *pleases*, that is, if he reduces them into possession by receiving or recovering them at law; but if he dies before he has recovered or reduced them into possession, so that at his death they still continue *choses in action*, they shall survive to the wife; for the husband never exerted the power he had of obtaining an exclusive property in them." 2 *Black. Com.* 434. The husband may have the wife's choses in action *if he pleases;* but suppose the husband does not think proper to exert the power he has of reducing them to possession, will a court of equity *compel* him, to do so, and thus defeat the wife's *valuable right* of survivorship? No case has been cited at the bar establishing such a principle, and we have the authority of Chief Justice Marshall in *Gallego* vs. *Gallego's, Ex'rs,* before cited, for saying, that no case can be found in which creditors have required the aid of the court to *compel* the husband to reduce the wife's choses in action into his possession.

Courts of equity have always been active in *protecting* the rights of the wife, but never active so far as we can discover in lending their aid to *defeat* or *destroy* those rights. In *Napier* vs. *Howard,* 3 *Kelly R.* 192, decided by this Court at Americus, the Court had acquired jurisdiction of the cause, and one of the principal questions made was as to the *wife's equity.* The right of the creditor was not contested, and the question now presented for our judgment by the record in this case, was not made in that, and did not therefore enter into the consideration or judgment of the Court. In *Napier* vs. *Howard,* we directed an inquiry to be had as to what would be a suitable provision for the wife and children, including the whole fund, if necessary, and if not, then the balance to be paid over to the creditor.

This case is mentioned, because the rights of the creditor would seem to have been recognised in the judgment of the Court, but as before remarked, the title of the complainant was not questioned, nor the right of a court of equity to *compel* the husband to reduce his wife's choses in action into possession, in any way considered. That case came before this Court on a bill of exceptions to the decision of the Court below in refusing to dissolve an injunction.

In the case now before us, the complainants seek to have their

demand *against Adams*, paid out of the property of *his wife*. Their debt was not contracted on the faith of this property of the wife, but was contracted long anterior to the death of Robert Willis Flournoy, and we have not been able to perceive upon what principle of equity they are entitled to have their demand against their *debtor*, paid out of property which does not, either in law or equity, belong *to him*.

Our judgment therefore is, that the husband has no absolute or certain interest *vested in him* to his wife's choses in action, until he *reduces them into his possession*, and that as a *general rule*, a court of equity will not *compel* him to reduce them to possession, so as to defeat the wife's right of survivorship thereto.  The [3.] complainants being the creditors of the husband, have no other rights as against the wife's property, than the husband, who is *their debtor*, and to whose rights they claim to be subrogated.  For these reasons, let the judgment of the Court below be affirmed.

Judgment affirmed.