ANNA LOUISE POST *vs.* FIRST AUBURN TRUST COMPANY.

Androscoggin.    Opinion June 29, 1931.

*Frank A. Morey,* for plaintiff.
*George C. Webber,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

DUNN, J. This case is here, on report from an Androscoggin County sitting of the Superior Court, on an agreed statement of facts. The action was trover for the conversion of twenty shares of the capital stock of The Mountain States Telegraph and Telephone Company. The stock was bequeathed the plaintiff in her minority. A certificate, in the name of David A. Post, Guardian of Anna Louise Post, minor, was issued.

The guardianship was by judicial appointment. The guardian, as such, and without a license from the Probate Court, assigned the certificate in blank, and delivered it to the defendant bank as collateral security for the payment of a promissory note signed by him, individually only. The consideration for the note was a loan of fifty dollars. The money was being borrowed, the guardian told the treasurer of the bank, for the benefit of his ward. Later, the guardian borrowed one hundred dollars ; still later, fifty dollars more. In each of these transactions, as in the first, he gave his own note, used the same security, and stated the borrowing to be for his ward.

Ultimately, a single note, for which the stock was made collateral, evidenced the total amount of the loans. Of this note there were frequent renewals. The last, which matured June 8, 1926, was, too, signed but personally. It specifically describes the stock as in pledge.

Upon coming of age, and after the death of her guardian, the ward demanded that the bank surrender the stock to her. The demand was refused. Suit followed.

There is but one question in this case, though stipulation accompanying the report would propound others, which will bear a present argument. That question is, whether the guardian validly pledged the stock. The answer must be "Yes."

The power of a guardian over the personal estate of his ward is coextensive with that of an executor of a will. *Echols* v. *Speake* (Ala.), 64 So., 306, Ann. Cas., 1916C, 332. An executor, his title being fiduciary and not beneficial, may pledge the personal property of his testator, for the general purposes of the will. *Carter* v. *National Bank*, 71 Me., 448.

In the management of the ward's estate, it is for a guardian to apply the income and profits for the maintenance of the ward ; if these be insufficient, principal may be used. R. S., Chap. 80, Sec. 15.

The use of principal may involve selling property; borrowing money is an alternative mode of raising funds.

The statutes provide, it is true, that the Probate Court may license a guardian to sell or mortgage the estate of his ward. R. S., *supra*. Certainly, in relation to personal estate, the statutes would seem to be permissive, and not restrictive. A guardian may protect the interests of himself and his sureties by procuring a license, and thus establish in advance that a sale or mortgage is for the interest of the ward, instead of leaving that fact open to dispute at a future day; but he is not obliged to do so. *Gardner* v. *Beacon Trust Company*, 190 Mass., 27, 31; *Maclay* v. *Equitable Life Assurance Society*, 152 U. S., 499, 504, 38 Law ed., 528, 531.

If the collateral had been accepted from the guardian, with knowledge, or reason to know, that he intended to misapply the money, or was, in fact, at the time applying it to his own private use, the pledge would not have been good. *Field* v. *Schieffelin*, 7 *Johns*, Chap. 150, 11 Am. Dec., 441; *Carter* v. *Bank*, supra.

But the agreed facts do not exhibit such a case. On the contrary, they show good faith.

What became of the borrowed money is not of moment. The lender was not bound to see to its application. *Field* v. *Schieffelin*, supra; *Bank* v. *United States Fidelity, etc., Co.* (Ala.), 75 So., 168. What is of consequence, was the affirmation of the guardian that the money was for his ward, and the absence by the bank of knowledge, or notice, of any contemplated breach of trust, if such there were, on the part of the now dead guardian. *Carter* v. *Bank*, supra.

The fact that, in executing the note, the maker omitted to designate his action as that of guardian eo nominee, does not affect the issue. The debt contracted by the guardian was in law personal. *Davis* v. *French*, 20 Me., 21; *Carter v. Bank*, supra; *Call* v. *Garland*, 124 Me., 27. It would have been just as much personal whether the guardian added to his signature his tutelar description or not. *Farmers', etc., Bank* v. *Sanford* (Ala.), 43 So., 226 That he did not add the descriptive word, "guardian," to his signature, was not, of itself, sufficient to inform the defendant that the money was not for the benefit of the ward.

In form, the money was advanced to the guardian personally, but actually upon security which revealed upon its face, as the bank was bound to notice, that it belonged to the estate of the ward.

The bank was not wanting in diligence.

*Judgment for defendant.*